**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Michelin North America, Inc., <br><br>         Plaintiff, <br><br>    v. <br><br> Michael Dotson, <br><br>         Defendant. | C. A. No. _____ <br><br> **COMPLAINT** <br><br> **(JURY TRIAL REQUESTED)** |

Plaintiff, Michelin North America, Inc. (hereinafter "Plaintiff" or "Michelin"), complaining against Michael Dotson ("Dotson"), hereby alleges and would show unto this Honorable Court as follows:

## ALLEGATIONS RELATING TO PARTIES, VENUE, AND JURISDICTION

1.      Plaintiff Michelin is a corporation duly organized and existing under the laws of the State of New York with its principal place of business in Greenville County, South Carolina.

2.      Upon information and belief, Defendant Dotson is a citizen and resident of Tennessee.

3.      This Court has jurisdiction over the Dotson because, among other things, Dotson consented to jurisdiction in this court in the Secrecy and Non-Compete Agreement (the "Secrecy Agreement") that is the subject of this action.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1836(c) over the claims herein arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for all other claims herein.  Further, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds seventy-five thousand dollars and complete diversity of citizenship exists between the parties.

5.      Venue is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and under 28 USC § 1400(a) because the Court has personal jurisdiction over Defendant.

## GENERAL FACTUAL ALLEGATIONS

6.      Michelin is engaged in the business of manufacturing, distributing, and selling tires for various applications and equipment.

7.      The Carlstar Group, LLC ("Carlstar") is a tire manufacturer that competes with Michelin.

8.      From approximately April 2005 until August 24, 2018, Dotson was employed by Michelin in Michelin's Research & Development department.  In that capacity, he had access to confidential, proprietary, and trade secret information belonging to Michelin in Greenville, South Carolina.

9.      Because of his access to this information, as a condition of his employment with Michelin, Dotson signed a Secrecy and Non-Compete Agreement (the "Secrecy Agreement"), as well as an Agreement to Return Michelin Materials.  The Secrecy Agreement provides, in relevant part:

> Michelin maintains as confidential and as trade secrets: a) certain technical information including, but not limited to, research and development work, production methods and techniques, computer programs, know-how, recipes, compounding formulas, designs, design specifications, and unpublished tire capability data; b) business information including, but not limited to, the identity of Michelin's personnel and their functions, staffing levels, costs, purchasing, profits, marketing and sales data, lists of suppliers of raw materials; and c) information pertaining to future developments including, but not limited to, future product lines, improvements or merchandising and marketing plans. In the course of your employment with Michelin, you will have access to and acquire knowledge of such confidential and proprietary information, and trade secrets (hereinafter collectively referred to as "Information") concerning the activities of Michelin.

2

10.     In Paragraph 1 of the Secrecy Agreement, Dotson made the following affirmative promise:

> To maintain Information in confidence at all times during and after your employment, whether acquired before this date or after, or in the course of or arising from your employment with Michelin. You specifically agree that you will not use any Information independent of your work for Michelin, and will not divulge Information to others, either during or after employment by Michelin, except as specifically authorized and required by your duties to Michelin.

11.     Paragraph 5 of the Secrecy Agreement provides:

> You also agree to return to Michelin all tangible, stored or recorded Information, including but not limited to, papers, documents, notes, lists, drawings, sketches, transparencies, records, computer programs, tapes, disks, models, materials, or other information storage media, and drafts or copies thereof, of every kind in your possession or control.

12.     The Agreement to Return Michelin Materials provides as follows:

> In consideration of my employment with Michelin North America, I agree that should my employment with Michelin cease for any reason, I will immediately return to Michelin all Michelin documents, materials, equipment and all other property of any kind belonging to Michelin, whether confidential, proprietary or not, obtained by me during my employment with Michelin. I will also return all correspondence and memoranda belonging to Michelin which was issued or received by me during my employment.

13.     Michelin also maintains a Trade Secrets and Confidential Data Policy that was and is binding on Dotson. That policy instructs employees regarding the importance of trade secrets and confidential information to Michelin, and requires employees to protect Michelin's trade secrets and confidential information  Dotson expressly agreed to abide by the Trade Secrets and Confidential Data Policy, and Michelin instructed Dotson of the significance of that policy to Michelin. Michelin instructed Dotson that failure to comply with the Trade Secrets and

Confidential Data Policy was a "major conduct infraction" so severe that it would warrant immediate termination of employment.

14.     Michelin allows certain confidential and trade secret information to be maintained on the Michelin-issued computers and approved Michelin storage devices used by certain employees who have a need to know that information.  Michelin undertakes numerous efforts to ensure that the information on these devices is secure.  Among other things, Michelin maintains a Security Charter that includes policies and procedures regarding the use of a Michelin computer.  Michelin requires that use of a Michelin computer be subject to identification and authentication procedures to ensure that only authorized personnel have access to Michelin information.  It requires antivirus software to guard against corruption of data, that passwords be kept secure, that only approved devices be connected to company computers, that certain files be protected using approved encryption software, that computers be locked out when the employee leaves his or her desk even for a short time, and that laptops be secured with an anti-theft cable and stored in a locked cabinet when not in use.  It also requires that any and all approved storage media must be secured and be protected with encryption using Michelin-approved cryptology techniques.  Michelin instructed its employees, including Mr. Dotson, regarding these policies, which are binding upon Mr. Dotson.

15.     In addition, Michelin maintains a Code of Ethics.  Michelin trained Dotson on its Code of Ethics and provided a copy of the Michelin Code of Ethics to Dotson.  The Code of Ethics provides, in relevant part:

> Occasionally you may hold information belonging to the [Michelin] Group [of Companies] that must remain confidential where its disclosure or premature revelation would be harmful to the Group.
>
> This information may concern, for example, our products, studies, technical know-how, industrial and commercial projects, and

financial data or other future strategy, tactical, budgetary or other plans that are not in the public domain.

Each employee must ensure that this information is not disseminated either directly or indirectly outside the Company, nor communicated to persons employed within the Group who are not authorized to receive such information.

16.     In August 2018, Dotson informed Michelin that he had accepted a job with Carlstar as VP of Business Transformations.  He also informed Michelin representatives that he was not going to be working in the area of materials when he was with Carlstar.

17.     On Dotson's last day of employment, Michelin specifically reminded Dotson of his obligations under the Secrecy Agreement, including his obligations of non-disclosure and to return information belonging to Michelin.

18.     In or around December 2018, Michelin was notified by a Carlstar employee that Dotson had been using an external hard drive that contained spreadsheets, data, and mixing information, and had shared what appeared to be Michelin documents during conferences with Carlstar employees.  The Carlstar employee emailed images of two such documents that Dotson had shared, including a screen shot of a spreadsheet that Dotson had shared with his team over Skype and an image of a mixing procedure for production.  Michelin has confirmed that the information was Michelin data and information.

19.     The information provided by the Carlstar employee constitutes Information within the meaning of the Secrecy Agreement and also constitutes trade secrets within the meaning of the Defend Trade Secrets Act and South Carolina Trade Secrets Act in that it constitutes business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public

or any other person who can obtain economic value from its disclosure or use, and is the subject

of reasonable efforts to maintain its secrecy. A competitor can derive value from this information

by, for example, gaining efficiency and speed in the production process.

20.    Upon information and belief, Dotson had other Michelin Information and trade

secrets on his external hard drive and continues to have such Michelin Information and trade

secrets in his possession.

21.    On May 25 and May 28, 2018, shortly before Dotson left Michelin, Dotson

accessed and downloaded spreadsheets and data relating to certain Michelin tires even though,

upon information and belief, such spreadsheets and data were unrelated to Dotson's job duties for

Michelin at that time.  The spreadsheets and data included information regarding the design of

such tires, testing results relating to such tires, and performance information relating to such tires.

Dotson downloaded these documents from a protected network.  The spreadsheets and data that

Dotson accessed constitute Michelin Information within the meaning of the Secrecy Agreement

and trade secrets, and would be of tremendous value to a competitor attempting to develop tires

that are competitive to Michelin.

22.    Upon receiving information from the Carlstar employee, Michelin wrote separately

to Dotson and Carlstar in December 2018 informing them of the information that had been received

and requesting that they contact Michelin to address Michelin's concerns.  Michelin has had

numerous communications with Carlstar since that time.  Dotson has ignored Michelin's request.

23.    Michelin recently learned that in the fall of 2018, Dotson contacted a Michelin

employee requesting information about mixing and rubber.

24.     Given Dotson's retention and use of Michelin Information and trade secrets at

Carlstar despite the Agreement to Return Materials and the Secrecy Agreement (of which he was

reminded shortly before he left), and given the value that Carlstar would derive from information to which Dotson had access at Michelin, including without limitation the information Dotson downloaded on May 25 and 28, 2018, Michelin has grave concerns regarding the security of its Information and trade secrets.

## FOR A FIRST CAUSE OF ACTION
**(Violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, et. seq.)**

25.     Michelin re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

26.     Dotson has used and shared with others at Carlstar information of Michelin that constitutes trade secrets under the Defend Trade Secrets Act, in that it constitutes business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and is the subject of reasonable efforts to maintain its secrecy.  Among other things, Michelin protected this information through firewall and other security measures, using password protection and other security measures to restrict access to the information on a need to know basis, requiring employees to sign non-disclosure agreements that cover this type of information, maintaining and notifying employees of its Trade Secrets and Confidential Data Policy, which covers this type of information, maintaining policies that prohibit the transfer of information to personal storage devices, maintaining a security, sign-in, and badge system at its offices to ensure that no un-escorted visitors were on its premises, and requiring confidentiality provisions in agreements with customers and vendors.  Michelin provided Dotson with access to certain trade secrets of Michelin

because Dotson was under duties of loyalty and confidentiality to Michelin, which Michelin believed Dotson would fulfill.

27.    Dotson has misappropriated these trade secrets of Michelin by:

    a.  retaining them when going to work for a competitor despite contractual prohibitions against him doing so,

    b.  using such trade secrets during his employment with Carlstar without express or implied consent by Michelin when Dotson (i) knew or had reason to know, at the time of such use, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy, and/or (ii) used improper means to acquire knowledge of the trade secret in that he retained the trade secrets despite obligations to return them upon termination of his employment;

    c.  disclosing such trade secrets during his employment with Carlstar without express or implied consent by Michelin when Dotson (i) knew or had reason to know, at the time of such disclosure, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy, and/or (ii) used improper means to acquire knowledge of the trade secret in that he retained the trade secrets despite obligations to return them upon termination of his employment; and

    d.  in such other particulars as may be revealed through discovery and/or proven at trial.

28.    The Michelin trade secrets that were misappropriated by Dotson relate to products that are used in, and/or intended, for use in interstate commerce.

8

29.     Furthermore, Dotson's actions amount to a threatened misappropriation of trade secrets pursuant to 18 U.S.C. §1836(b)(3)(A)(i).  In particular, despite his obligations to return all Michelin documents in his possession, Dotson has had trade secrets in his possession following his termination from Michelin, including trade secrets on an external hard drive that easily could have been stored elsewhere, and there is evidence that he has already shared Michelin trade secrets with others at Carlstar.  Moreover, Dotson downloaded other trade secrets before leaving Michelin, which, upon information and belief, were unnecessary for this work at Michelin, but would be enormously valuable to a competitor seeking to develop the very types of products that Carlstar has been trying to develop.

30.     As a direct result of Dotson's misappropriation of Michelin's trade secrets, Michelin has or will suffer damages under 18 U.S.C. §1836(b)(3)(B)(i) and/or (ii).

31.     Dotson's misappropriation as alleged herein was a willful and/or malicious, and, as a result, Michelin is entitled to an award of exemplary damages pursuant to 18 U.S.C. §1836(b)(3)(C) and an award of attorney's fees pursuant to 18 U.S.C. §1836(b)(3)(D).

32.     In accordance with 18 U.S.C. §1836(b)(3)(A), Michelin is entitled to injunctive relief against Dotson for his misappropriation of trade secrets.

33.     Michelin is entitled to a judgment of this Court as follows:

   a.  awarding monetary damages to Michelin against Dotson in an amount to be determined at trial;

   b.  awarding double damages or other exemplary damages to Michelin against Dotson;

   c.  awarding Michelin its attorney's fees incurred in this lawsuit;

d.  finding that Dotson, along with all persons or entities acting in concert with him, be temporarily, preliminarily, and permanently restrained and enjoined from further wrongful misappropriation and use of such trade secrets;

e.  ordering Dotson to produce for Michelin's inspection all storage devices that Dotson has had access to or used at any time on or after May 23, 2018 so that Michelin may inspect such devices for the presence of any Michelin trade secrets or other information;

f.  ordering Dotson to return to Michelin all materials that contain, refer to, or derive from such trade secrets, and to retain no copies of any such materials; and

g.  for such other relief as this court deems just and proper.

**FOR A SECOND CAUSE OF ACTION**
**(Misappropriation of Trade Secrets, S.C. Code §§ 39-8-10, et. seq.)**

34.     Michelin re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

35.     Dotson has used and shared with others at Carlstar information of Michelin that constitutes trade secrets under the South Carolina Trade Secrets Act, in that it constitutes information that derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by the public or other persons who can obtain economic value from its disclosure or use, and is and always has been the subject of efforts by Michelin that are reasonable under the circumstances to maintain its secrecy. Among other things, Michelin protected this information through firewall and other security measures, using password protection and other security measures to restrict access to the information on a need to know basis, requiring employees to sign non-disclosure agreements that cover this type of information, maintaining and notifying employees of its Trade Secrets and

10

Confidential Data Policy, which covers this type of information, maintaining policies that prohibit the transfer of information to personal storage devices, maintaining a security, sign-in, and badge system at its offices to ensure that no un-escorted visitors were on its premises, and requiring confidentiality provisions in agreements with customers and vendors. Michelin provided Dotson with access to certain trade secrets of Michelin because Dotson was under duties of loyalty and confidentiality to Michelin, which Michelin believed Dotson would fulfill.

36.    During his employment with Carlstar, Dotson used trade secret information of Michelin, including testing data and mixing procedures.

37.    Dotson has misappropriated Michelin's trade secrets by

    e.    retaining them when going to work for a competitor despite contractual prohibitions against him doing so,

    f.    using such trade secrets during his employment with Carlstar without express or implied consent by Michelin when Dotson (i) knew or had reason to know, at the time of such use, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy, and/or (ii) used improper means to acquire knowledge of the trade secret in that he retained the trade secrets despite obligations to return them upon termination of his employment;

    g.    disclosing such trade secrets during his employment with Carlstar without express or implied consent by Michelin when Dotson (i) knew or had reason to know, at the time of such disclosure, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy, and/or (ii) used improper means to acquire knowledge of the trade secret in that he retained the

trade secrets despite obligations to return them upon termination of his employment; and

h. in such other particulars as may be revealed through discovery and/or proven at trial.

38.    Furthermore, Dotson's actions amount to a threatened misappropriation of trade secrets pursuant to S.C. Code Section 39-8-50(A).  In particular, despite his obligations to return all Michelin documents in his possession, Dotson has had trade secrets in his possession following his termination from Michelin, including trade secrets on an external hard drive that easily could have been stored elsewhere, and there is evidence that he has already shared Michelin trade secrets with others at Carlstar.  Moreover, Dotson downloaded other trade secrets before leaving Michelin, which, upon information and belief, were unnecessary for this work at Michelin, but would be enormously valuable to a competitor seeking to develop the very types of products that Carlstar has been trying to develop.

39.    As a direct result of Dotson's misappropriation of Michelin's trade secrets, Michelin has or will suffer damages under S.C. Code Section 39-8-40(A) and/or (B).

40.    Dotson's misappropriation as alleged herein was a wilful, wanton, or reckless disregard of Michelin's rights, and, as a result, Michelin is entitled to an award of exemplary damages pursuant to S.C. Code Section 39-8-40(C).

41.    In accordance with S.C. Code Section 39-8-50, Michelin is entitled to injunctive relief against Dotson for his misappropriation of trade secrets.

42.    Dotson's misappropriation constitutes a willful misappropriation and, as a result, Michelin is entitled to an award of its reasonable attorney's fees under S.C. Code Section 39-8-80.

43.    Michelin is entitled to a judgment of this Court as follows:

h.  awarding monetary damages to Michelin against Dotson in an amount to be determined at trial;

i.  awarding double damages or other exemplary damages to Michelin against Dotson;

j.  awarding Michelin its attorney's fees incurred in this lawsuit;

k.  finding that Dotson, along with all persons or entities acting in concert with him, be temporarily, preliminarily, and permanently restrained and enjoined from further wrongful misappropriation and use of such trade secrets;

l.  ordering Dotson to produce for Michelin's inspection all storage devices that Dotson has had access to or used at any time on or after May 23, 2018 so that Michelin may inspect such devices for the presence of any Michelin trade secrets or other information;

m.  ordering Dotson to return to Michelin all materials that contain, refer to, or derive from such trade secrets, and to retain no copies of any such materials; and

n.  for such other relief as this court deems just and proper.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

44.     Michelin re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

45.     The Secrecy Agreement and the Agreement to Return Michelin Materials are both valid and binding contracts between Dotson and Michelin.

46.     Dotson has breached the Secrecy Agreement by:

a.  using Michelin Information while working for Carlstar;

b.  divulging Information to Carlstar;

c.  failing to maintain Information in confidence;

13

d.  failing to promptly deliver to Michelin all tangible, sored or recorded Information, and draft or copies thereof, of every kind in his possession or control; and

e.  in such other particulars as may be revealed through discovery and/or proven at trial.

47.     Dotson breached the Agreement to Return Michelin Materials by failing to return to Michelin all Michelin documents, materials, equipment and all other property of any kind belonging to Michelin obtained by Dotson during his employment with Michelin.

48.     As a proximate result of these breaches, Michelin has suffered and will continue to suffer damages, entitling Michelin to an award of actual damages against Dotson.

49.     In addition, Michelin is entitled to an award of attorney's fees incurred in enforcing the Secrecy Agreement based on a provision allowing for such fees in the Secrecy Agreement.

50.     Michelin is entitled to a judgment of this Court as follows:

a.  awarding monetary damages to Michelin against Dotson in an amount to be determined at trial;

b.  issuing a preliminary and permanent injunction as set forth in the Prayer for Relief below;

c.  ordering Dotson to produce for Michelin's inspection all storage devices that Dotson has had access to or used at any time on or after May 23, 2018 so that Michelin may inspect such devices for the presence of any Michelin secret, confidential, or other Michelin information,

d.  ordering Dotson to return to Michelin all materials that contain, refer to, or derive from Michelin materials, and that Dotson retain no copies of any such materials; and

e.    for such other relief as this court deems just and proper.

## FOR A FOURTH CAUSE OF ACTION
### (Injunctive Relief)

51.    Michelin re-alleges and incorporates by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

52.    Michelin will be immediately and irreparably harmed by the use and/or disclosure of its trade secrets and confidential information if it is not granted the injunctive relief requested herein.

53.    Michelin has no adequate remedy at law.

54.    Although injunctive relief would prevent irreparable injury to Michelin, the injury to Dotson, if any, will be insignificant.

WHEREFORE, Michelin demands and prays as follows:

1.    That the Court issue a Temporary Restraining Order and/or Preliminary Injunction immediately, and, thereafter, a Permanent Injunction enjoining Dotson, along with all persons or entities acting in concert with him, from the following:

a.    using, communicating, disclosing, revealing or otherwise making available any Michelin Information or trade secrets;

b.    Any and all other such acts as this Court deems appropriate for injunctive relief;

2.    That the Court order Dotson to produce for Michelin's inspection all storage devices that Dotson has had access to or used at any time on or after May 23, 2018 so that Michelin may inspect such devices for the presence of any Michelin secret, confidential, or other information;

3.      That the Court order Dotson to return to Michelin all Michelin property and materials, as well as all materials that contain, refer to, or derive from Michelin materials, and that Dotson retain no copies of any such materials;

4.      That the Court award Michelin damages;

5.      That the Court award Michelin its reasonable attorney's fee and all litigation expenses incurred in bringing this action;

6.      That the Court tax the cost of this action against Dotson;

7.      That the trial by jury be had on all issues so triable;

8.      That the Court award Michelin such other and further relief as is just and proper.

s/ J. D. Quattlebaum
J. D. Quattlebaum, Fed ID No. 5252
Denny P. Major, Fed ID No. 10225
Jonathan D. Klett, Fed. ID #12858
HAYNSWORTH SINKLER BOYD, P.A.
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, SC  29602
(864) 240-3249
(864) 240-3300 (facsimile)

*Attorneys for Plaintiff*
*Michelin North America, Inc.*

Dated:  May 7, 2019
Greenville, South Carolina